**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                                    Case No. 06-10664-DHW
                                                                         Chapter 13
GLADYS H. YELVERTON and
ELIJAH J. YELVERTON,

    Debtors.

## MEMORANDUM OPINION

Before the court is the debtors' objection to the secured claim of Army Aviation Center Federal Credit Union (hereafter Army Aviation) and Army Aviation's objection to the confirmation of the debtors' plan.[1]  Both matters, however, concern whether the cross-collateralization provisions of the parties' contracts result in Army Aviation's claim being secured by the debtors' vehicle.

### Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. §1334 and from the order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court.  Further, because the issues involved here are core proceedings pursuant to 28 U.S.C. §157, this court's jurisdiction is extended to the entry of a final order or judgment.

### Factual Findings

The relevant facts are undisputed.  On March 31, 2000, Gladys H. Yelverton entered into an "Xpress Permanent Loan Agreement" with Army Aviation.  The agreement served to establish

---

[1] The debtors' objection to Army Aviation's claim is at Doc. #34, and the creditor's response is at Doc. #45.  Army Aviation's objection to confirmation of the debtors' plan is at Doc. #44, as amended at #58.

a master account through which a number of sub-account loans could be made. Under this agreement, Ms. Yelverton was required to apply for each successive loan (sub-account) made under the master account. The first loan under the Xpress Permanent Loan Agreement was made in March 2000 (Exh. C-1) and was an unsecured loan. The loan agreement, however, contains the following language:

> YOU AGREE: That collateral securing other loans with us may also secure this loan . . .

Exh. C-1, Express Permanent Loan Agreement, ¶ 2. The balance due on this note as of the date of bankruptcy was $4,528.94.

On July 7, 2000, Gladys Yelverton entered into a second "X-Press Permanent Loan Agreement" with Army Aviation. However, under this second agreement, Clifton Yelverton and E.J. Yelverton were joint makers on the note along with Gladys Yelverton. *See* Exh. C-2. Like the March 2000 agreement, the July 2000 agreement also provided for sub-accounts.

The second loan was secured by a 2000 Isuzu Rodeo LS.[2] As of the date the bankruptcy, $1,744.74 was owed on the July agreement. However, since that time, this note has been paid in full. The parties agree that, as of the date of bankruptcy, the value of the car was $8,600.

In addition to Army Aviation's reservation of a security interest in the Isuzu, the July 2000 agreement further provides:

> The Security interest secures the advance and any extensions, renewals or refinancing of the advance. It also secures any other advances you may have now or may

---

[2] The vehicle is titled in the names of both debtors and their son, Clifton D. Yelverton. Clifton D. Yelverton, not the debtors, has had possession and use of the vehicle, and he has made all payments under the July 2000 note.

receive in the future under the Xpress Permanent Loan Agreement**, as well as, any other amounts you owe the Credit Union for any reason now or in the future, unless disclosed otherwise on a Security agreement or the Security is your principal place of dwelling**. If any Security is household goods as defined by the Credit Practices Rule, that property will secure only the advance made to purchase that property and not other amounts you owe.

Exh. C-2, Xpress Loan Advance Application and Security Agreement (Financing Statement), p. 2 (Emphasis added).

As noted, since the debtors filed for bankruptcy relief, the July 2000 loan has been paid in full. Army Aviation refuses, however, to release the title to the vehicle securing the debt contending that the vehicle also secures the March 2000 loan through the cross-collateralization clauses of the agreements.

Finally, Ms. Yelverton requests that the court pay special heed to a provision of the July 2000 agreement. In particular, a section of the agreement is styled "Additional Terms of Agreement." Within that section, instructions are given to check a box if there has been "a change in terms from the Permanent Loan Agreement and Addendum." *See* Exh. C-2, Xpress Loan Advance Application and Security Agreement (Financing Statement), p. 1. That box was left unchecked.

Legal Conclusions

The issue, here, is whether, through the cross collateral language of the two loan agreements, the 2000 Isuzu Rodeo is collateral for the March 2000 note. For the following reasons, the court finds that it is not.

Whether a debtor's interest in property is property of the estate is a federal question. However, the nature and existence of the debtor's right to property are determined by state law. *Butner v. U.S.*, 440 U.S.

48, 54, 99 S.Ct. 917, 917-18, 59 L.Ed.2d 136 (1979); *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir. 1998) (citing *Southtrust Bank of Alabama v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir. 1989), cert. denied, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). Therefore, this court must look to Alabama law for an answer in this dispute which involves the nature or existence of the debtors' right to property.

In particular, § 7-9A-204 of the Alabama Code controls. That statute provides:

> (a) *After-acquired collateral.* Except as otherwise provided in subsection (b), a security agreement may create or provide for a security interest in after-acquired collateral.
>
> (b) *When after-acquired property clause not effective.* A security interest does not attach under a term constituting an after-acquired property clause to:
>  (1) consumer goods, other than an accession when given as additional security, unless the debtor acquires rights in them within 10 days after the secured party gives value; or
>  (2) a commercial tort claim.
>
> (c) *Future advances and other value.* A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles, or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant to commitment.

*Code of Alabama*, § 7-9A-204 (1975).

Army Aviation contends that the March 2000 note is secured by the Isuzu through the after-acquired property clause of that contract. The statute, though, precludes that result.

The March 2000 note was originally unsecured, but the note contained a clause providing "[t]hat collateral securing other loans with

us may also secure this loan." Exh. C-1, Express Permanent Loan Agreement, p. 2. Although subsection (a) of § 7-9A-204 permits the taking of a security interest in after acquired property, subsection (b) of that same statute invalidates such security interests in consumer goods if those goods are not acquired within 10-days of value being given by the creditor. Here, the Isuzu was acquired in July 2000, more than 10 days after Army Aviation gave value under the March 2000 note. Hence, the after-acquired clause of the March 2000 agreement cannot be the basis for which the vehicle secures that loan.

Army Aviation further argues that the March note is secured by the vehicle through the cross-collateralization or dragnet language contained in the July 2000 note. A dragnet clause is one that provides that a security interest given for a particular loan also serves as security of other existing, antecedent debts. Alabama law gives effect to such clauses. *Dixie Ag Supply, Inc. V. Nelson*, 500 So.2d 1036, 1040 (Ala. 1986) citing *Underwood v. Jarvis*, 358 So.2d 731 (Ala. 1978); *City National Bank of Dothan v. First National Bank of Dothan*, 285 Ala.340 (Ala. 1970); *First National Bank of Guntersville v. Bain*, 237 Ala. 580 (Ala. 1939).

Yet, in giving such clauses effect, Alabama law requires that the future advance or cross-collateralization clauses be between the same parties. In *Ex parte Chandler (In re First Southern Development v. Chandler)*, 477 So.2d 360 (Ala. 1985), the Court construing a future advance clause noted that "between the same parties" was the key to the enforceability of such provisions.

In the case at bar, the parties to the two notes in question are not the same. Gladys Yelverton was the sole maker of the March 2000 note while Gladys, Clifton, and E.J. Yelverton were co-makers in the July 2000 contract. The July 2000 note provides that the automobile will secure "any other amounts **you owe** the Credit Union for any reason now or in the future." Exh. C-2, Xpress Loan Advance Application and Security Agreement (Financing Statement), p. 2 (Emphasis added). The pronoun "you" in this contract refers to the three co-makers. There is no indication that the parties to the July contract intended that the vehicle

also secure the individual and separate obligations of any one of the co-makers. As a result, the cross-collateralization clause of the July 2000 note does not extend the security interest in the vehicle to cover Ms. Yelverton's March 2000 note.

## Conclusion

For these reasons, the debtors' objection to Army Aviation's claim is due to be sustained and Army Aviation's objection to the debtors' chapter 13 plan overruled. Pursuant to Fed.R.Bankr.Proc. 9021, separate orders will enter sustaining the objection to the claim and confirming the debtors' plan.

Done this the 19th day of March, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtors
   Leonard N. Math, Creditor's Attorney
   Curtis C. Reding, Trustee