UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 06-10664-DHW
                                         Chapter 13
GLADYS H. YELVERTON
ELIJAH J. YELVERTON,

         Debtors.

## OPINION ON OBJECTION TO CONFIRMATION

Mazda American Credit filed an objection to confirmation contending that Gladys H. Yelverton has not proposed an appropriate interest rate for payment of its claim secured by a 2004 Mazda MZ6. Elijah J. Yelverton is not liable on the debt.

The objection came on for evidentiary hearing on May 9, 2007 by which time the debtor had amended the plan to propose payment of the 7.2% interest rate provided by the contract. The creditor requests interest at the prime rate of 8.25% plus a 1% upward risk adjustment.

The debtor listed the value of the vehicle at $12,000 in the plan. The creditor filed a claim in the amount of $10,677.54. The debtor stated that the claim does not fall within the "hanging paragraph" appended to 11 U.S.C. § 1325 because the vehicle was not purchased for the debtor's personal use. However, because the value exceeds the debt, the claim is nevertheless fully secured and not subject to bifurcation. 11 U.S.C. § 506.

11 U.S.C. § 1325(a)(5) governs the treatment of secured claims in chapter 13. Section 1325(a)(5)(B)(ii) requires the debtor, *inter alia,* to pay the present value of the claim as of the effective date of the plan.[1]

---

[1] With respect to each allowed secured claim provided for by the plan, the court cannot confirm the plan unless the "value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii).

In May 2004, the Supreme Court in a plurality decision adopted the prime-plus formula approach for calculating the rate of interest which will ensure present value under section 1325(a)(5)(B)(ii). *See Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d 787 (2004). Four of the justices held that the formula starts with the prime national interest rate and includes an adjustment for risk of nonpayment.[2] A fifth justice held that the statute does not require an upward risk adjustment. The remaining four justices dissented. The plurality "expressly rejected the use of the contract rate of interest to satisfy the present value requirement in a Chapter 13 plan." *In re Fleming,* 339 B.R. 716, 721 (Bankr. E.D. Mo. 2006).

However, the *Till* decision was rendered in a case where the secured claim was "stripped down" or "bifurcated" into its secured and unsecured components. If the secured claim is not bifurcated, does *Till* apply?

This court has addressed the issue in the context of a claim falling within the hanging paragraph. *See In re Wright*, 338 B.R. 917 (Bankr. M.D. Ala. 2006). By making section 506 inapplicable, the hanging paragraph prevents bifurcation of a claim. Therefore, claims falling within the hanging paragraph are treated as fully secured irrespective of the value of the collateral. In *Wright,* the creditor argued that *Till* applies only to "strip down cases." *Id.* at 919. The court rejected the argument, stating that *Till* applies in "all chapter 13 cases which are being confirmed over the objection of a secured creditor irrespective of the value of its

---

[2] The four justices reasoned as follows:

> Taking its cue from ordinary lending practices, the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default.

*Till*, 541 U.S. at 478-79.

2

collateral in relation to the amount of its claim." *Id.* In other words, *Till* applies in all "cram down cases." The instant case is a "cram down case" because the creditor has not agreed to accept the treatment proposed under the plan. Therefore, *Till* applies.

The next inquiry is the interest rate dictated by *Till*. At a minimum, *Till* requires the prime rate of interest to paid on Mazda's secured claim. The creditor introduced uncontroverted evidence that the current prime lending rate is 8.25%.

The only issue remaining is whether the prime rate should be increased to compensate for risk of nonpayment. The four justices in the plurality stated as follows:

> Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment.

*Till*, 541 U.S. at 479 n.18. However, Justice Thomas, concurring in the judgment, held that the "clear text of the statute" does not require a "debtor-specific" risk adjustment:

> Both the plurality and the dissent ignore the clear text of the
>
> statute in an apparent rush to ensure that secured creditors are not undercompensated in bankruptcy proceedings. But the statute that Congress enacted does not require a debtor-specific risk adjustment that would put secured creditors in the same position as if they had made another loan. . . .
>
> Thus, in order for a plan to satisfy § 1325(a)(5)(B)(ii), the plan need only propose an interest rate that will compensate

3

> a creditor for the fact that if he had received the property immediately rather than at a future date, he could have immediately made use of the property. In most, if not all, cases, where the plan proposes simply a stream of cash payments, the appropriate risk-free rate should suffice.

Till, 541 U.S. at 486, 487 (Thomas, J., concurring).

In the instant case, the court concludes that no debtor-specific adjustment should be made. The creditor stipulated that the risk of nonpayment is low. Indeed, the debtor has made every payment that has come due under the plan since September 2006. The creditor has an additional measure of adequate protection in this case because the value of the vehicle exceeds the debt. Moreover, the prime lending rate exceeds the contract interest rate in this case. The debtor has no prior bankruptcy cases with this court. The debtor is making the payments under the plan through a working income withholding order.

For the above reasons, the court concludes that no risk adjustment should be added in this case. However, the court cannot confirm the debtor's plan which proposes to pay less than the prime lending rate of interest. An order consonant with this opinion will enter separately.

Done this 21st day of May, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtors
   Gladys H. Yelverton, Attorney for Debtors
   Leonard N. Math, Attorney for Mazda
   Curtis C. Reding, Trustee